■ CAROLYN S. FARINA, Individually and as Administratrix of the Estate of PETER J. FARINA, Deceased, et al., Respondents, v NIAGARA MOHAWK POWER CORPORATION, Appellant, et al., Defendants. — Appeal from an order of the Supreme Court at Special Term, entered June 13, 1980 in Schenectady County, which denied the motion of defendant Niagara Mohawk Power Corporation to dismiss plaintiffs' causes of action in breach of warranty and strict products liability. On December 13, 1978, the decedent visited premises designated 1009-1011 Congress Street in Schenectady. The premises were owned by defendants Unberto and Amerina Paniccia and leased to defendant William Vrooman, Sr. During the visit, decedent proceeded to assist Vrooman in the removal of a CB antenna from the upper portion of the afore-mentioned premises. At some point during the process, the antenna was caused to come into contact with overhead lines of the Niagara Mohawk Power Corporation (hereafter Niagara Mohawk) resulting in decedent's death. Plaintiff, having been duly issued letters of administration, commenced this action on behalf of decedent's estate and on her own behalf. The complaint alleges causes of action in negligence, strict products liability, breach of warranty and nuisance. Defendant Niagara Mohawk moved to dismiss the causes of action for strict products liability and breach of warranty. Special Term denied the motion and this appeal ensued. We conclude that there must be a reversal. New York's doctrine of strict products liability generally follows the guidelines set forth in section 402 A of the Restatement of Torts 2d which casts liability on one who "sells any product in a defective condition". Some expansion of the doctrine has occurred. In *Delaney v Towmotor Corp.* (339 F2d 4, 6), the Second Circuit reasoned that a manufacturer who "placed a defective article in the stream of commerce" should not escape liability simply because it had not sold the article. Similarly, in *Nastasi v Hochman* (58 AD2d 564), the Second Department has indicated that given the right set of circumstances the doctrine might apply to the lessor of a defective product. Despite the limited expansion of the doctrine, we find no case in this or any other jurisdiction which has permitted a plaintiff to recover for injuries sustained from contact with an electrical line on the theory of strict products liability. The courts' resistance to the application of the doctrine is based upon a variety of reasons: electricity is not in a marketable state and the doctrine was not intended to apply in such cases *(Genaust v Illinois Power Co.,* 62 Ill 2d 456); claimed defects in the cable carrying the electrical current are insufficient to establish liability because the cable is not "packaging" for the current, is not sold to the consumer, and remains owned by and under the control of the utility *(Cratsley v Commonwealth Edison Co.,* 38 Ill App 3d 55); until actually delivered, the electricity has not been placed in the "stream of commerce" *(Petroski v Northern Indiana Public Serv. Co.,* 354 NE2d 736 [Ind]); a defect in the manufacture of the electricity or in the manufacture or design of the wire itself, not merely its location, must be shown *(Erwin v Guadalupe Val. Elec. Co-op.,* 505 SW2d 353 [Tex]). Furthermore, throughout the discussions in the commentaries and the cases dealing with the claims of those who have been injured through contact with electrical lines, there is the implicit suggestion that electricity, "A subtle agency that pervades all space and evades successful definition" (Ballantine's Law Dictionary), is not a product within the contemplation of the doctrine's authors. Additionally, we note the inapplicability of the strict liability doctrine. Finding its genesis in *Rylands v Fletcher* (LR 3 HL 330), that doctrine was imposed where there was found to be "ultrahazardous" activity, now denominated "abnormally dangerous" activities, and has achieved but limited acceptance. We find that the facts of

the case at bar place it outside the guidelines enunciated by Chief Judge Breitel in *Doundoulakis v Town of Hempstead* (42 NY2d 440, 448-449). Accordingly, causes of action designated "Third" and "Fourth" should have been dismissed. As to the causes of action for breach of warranty, we find section 2-318 of the Uniform Commercial Code inapplicable under the factual pattern presented here. In pertinent part, it reads: "A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may * * * be affected by the goods and who is injured in person by breach of the warranty." In the instant case, there was no sale *(Rochester Gas & Elec. Corp. v Public Serv. Comm. of State of N. Y., 94 Misc 2d 356, revd on other grounds 66 AD2d 509)*. There was no reasonable expectation that decedent would be injured as occurred here. Furthermore, we are unable to conclude that it was intended that electricity be included within the definition of "goods" (Uniform Commercial Code, § 2-105). Accordingly, causes of action designated "Fifth" and "Sixth" should also have been dismissed. Order reversed, on the law, without costs, and motion by defendant Niagara Mohawk Power Corporation granted. Main, J. P., Casey, Yesawich, Jr., and Herlihy, JJ., concur.

Weiss, J., concurs in part and dissents in part in the following memorandum. Weiss, J. (concurring in part and dissenting in part). I disagree in part with the majority and hold that the "Third" and "Fourth" causes of action grounded in strict liability are viable and should be tried. The facts pleaded may permit recovery on the theory that the transmission of electricity in a highly populated area via overhead lines is an abnormally dangerous activity, which doctrine, unlike products liability, does not require the sale or placement of a product into the stream of commerce, or proof of defect in manufacture. Proof may be allowed upon trial to establish the abnormally dangerous instrumentality and injury to an innocent bystander *(Doundoulakis v Town of Hempstead,* 42 NY2d 440, 446, 448-449). The *Doundoulakis* case is authority for preserving the right of a plaintiff to have his case decided by a jury and not be dismissed upon motion. Although imperfectly drafted, the subject causes of action are sufficient to permit proof of facts to establish strict liability, and albeit mislabeled, permit recovery if such proof indeed be found sufficient by a jury. It is within a trial court's discretion to permit amendment to correct the pleading (CPLR 3025, subd [c]) to conform to the proof (see *Murray v City of New York,* 43 NY2d 400; cf. *Matter of Times-Union of Capitol Newspaper Div. of Hearst Corp. v Harris,* 71 AD2d 333, app dsmd 50 NY2d 842). The order should be modified by reversing so much thereof as denied defendant's motion to dismiss the causes of action designated "Fifth" and "Sixth", and by granting defendant's motion as to these causes of action, and, as so modified, affirmed.